## Franklin Township v. D. R. Herring

*Walton V. Davis,* for plaintiff.
*Mark David Frankel,* for defendant.
*William A. Jones,* for additional defendant.

SPICER, *J.,* April 23, 1986—Franklin Township seeks to require defendant to disconnect a mobile home from a holding tank and to remove the holding tank from premises owned by defendant. Defendant has joined Clyde W. Topper, the township's

building permit officer as an additional defendant. New matter contained in defendant's answer raises issues of estoppel, laches, unclean hands, and vested rights.

Both the township and Topper have filed preliminary objections to these latest pleadings by defendant.

The complaint alleges that the township sewage enforcement officer informed defendant by two letters, dated July 13, 1984, and July 24, 1984, that her land was not suitable for an on lot sewage disposal system. The letter of July 13, 1984, stated, inter alia:

"You also expressed an interest in the use of a holding tank. In accordance with chapter 71.51 holding tanks are usually only permitted in two situations.

"(1) Where public sewer is imminent.

"(2) Where a building exists and it is necessary to obate (sic) a nuisance or public health hazard.

"In light of these restrictions I believe your property does not meet the requirements. It was my understanding that you may approach the Department of Environmental Resources regarding a variance for the use of a holding tank."

The letter of July 24, 1984, stated, inter alia:

"Please be advised that unless you possess a valid permit from this office, it is unlawful to install, construct, request construction bids, or alter a sewage disposal system or to construct, request construction bids for, install or occupy any building or structure for which a sewage disposal system is to be installed, as required by section 7 of the Pennsylvania Sewage Facilities Act."

Both letters clearly identified Martin and Martin Inc. as the township's sewage enforcement officer.

The complaint goes on to state that on August 9, 1984, defendant applied for a permit to move a mo-

bile home on the lot, was issued the permit and moved the vehicle onto the land. According to plaintiff, the permit was issued because defendant represented that the vehicle was to be used as a recreational vehicle and that no external plumbing was present or required. Township alleges that the vehicle was hooked up to an unauthorized holding tank some time thereafter without a permit being issued.

The answer admitted many of the allegations in the complaint but denied others. In the denials, defendant asserted a theme that has carried over to her complaint against Topper. She alleges that Topper told her that no sewage permit would be required as long as wheels and hitch remained on the vehicle and the self-contained disposal system remained above ground.

Defendant does not, as is the custom, incorporate allegations of new matter in the answers. Quite the reverse. In the first paragraph of her new matter (15), she incorporates the first 14 paragraphs of the answer into the new matter.

She also directed plaintiff to "plead to the enclosed reply to new matter" within 20 days.

Her complaint against Topper has three counts. The first is for misrepresentation, the second for intentional misrepresentation, and the third for negligence.

For no other reason than convenience, we will consider Topper's preliminary objections first. He raises the defense of official immunity in these objections. See *Swartz v. Masloff,* 62 Pa. Commw. 522, 437 A.2d 472 (1981).

The township and its employees are generally immune from claims for damages. 42 Pa.C.S. §8541, 8545. We think the Legislature, by enacting these provisions, has announced a clear policy that government should be free to do what must be done in

their day-to-day operation without fear of civil liability. The statute's wording is clear. Immunity is granted except for specific exceptions.

Those exceptions are described in sections 8542 and 8550. The former deals with (1) operation of vehicles, (2) care, custody, and control of personal property, (3) real property, (4) trees, traffic controls, and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody, and control of animals.

The gist of the action against the building permit officer peripherally deals with real estate but is directly concerned with the governmental function of issuance of permits. It does not deal with the maintenance and operation of township land nor the direct damage of Ms. Herring's property. None of the other exceptions are remotely relevant.

Thus, the court concludes that section 8542 does not spare the suit against Topper.

Section 8545 exempts acts which constitute crimes, fraud, actual malice, or willful misconduct. Ms. Herring argues that it is this section that allows her action. She further argues that questionable issues of malice are for the jury, not for the court to determine. *Black v. Weaver,* 18 Adams Co. L.J. 64 (1976).

We note that *Black* was decided before the statute's enactment. It interpreted *Yealy v. Fink,* 43 Pa. 212 (1862) which held township officials immune from personal suits unless "they acted with a malicious design to do plaintiffs injury or acted with such a reckless and wanton disregard of those interest as would be equivalent to malicious intent." (18 Adams Co. L.J. 68).

Section 8550 would seem to narrow this exception by requiring actual malice, not the legal equivalency of recklessness.

Paragraph 7 of the complaint against Topper is fairly illustrative of Ms. Herring's claim. It reads:

"On August 9, 1984, D. R. Herring applied for a building permit with Building Permit Officer Clyde W. Topper. During the course of submitting said application, Mr. Topper orally stated that he understood that the land in question did not perc (sic), that the wheels and hitch must remain on the vehicle which was being placed on the property, and that the self-contained sewage unit must remain above ground. D. R. Herring and Mr. Topper continued discussion concerning the size of the disposal tank. D. R. Herring inquired as to whether a 1,000-gallon would be adequate. Mr. Topper replied that such a tank was probably too large and that a 500-gallon would be much more adequate. He concluded the discussion by stating that he 'didn't give a damn what she used.' "

In reviewing these allegations, it is helpful to consider the nature of Mr. Topper's official function. He issued building permits. That job, as is the case in most government actions, involves intentional acts. There may be cases in which someone would sign and deliver a building permit negligently thinking it was something other than a permit. Usually, however, an official means and intends to do what he does. One may act negligently or even recklessly in assessing facts and determining whether permits should be issued or other actions taken but the final result is almost always the result of intention. If all that was required to remove immunity would be to allege an intentional act, there would be little left of immunity. Arguably, every intentional act that is taken without proper consideration is "willful misconduct."

Such an interpretation would reduce immunity to shambles. The Legislature obviously intended to re-

quire more. If we look to the other words in the section to add explanation, we find words such as "actual malice," "fraud," and "crime."

Defendant has, of course, characterized the conduct as willful misconduct but it is not her characterization that governs. It is the factual allegations from which the characterizations flow. *Swartz v. Masloff,* supra; *Ellis v. Livelsberger,* 27 Adams Co. L.J. 20 (1985).

The most that can be said of the allegations is that they show reckless conduct.

We will sustain Topper's objections. Although it is doubtful defendant can amend to plead actual malice or willful misconduct, we will give her an opportunity to do so.

We now turn our attention to the township's objections.

Technically, the notice to plead is faulty. Because we are sustaining other objections which require defendant to replead, we will only say that this deficiency should be corrected.

The court agrees with plaintiff that allegations in the answer should not be incorporated in new matter. The purpose of pleadings is to simplify issues, not to confuse them. Certainly, much of what has been pleaded in the answer is proper for new matter. However, when coupled with mere denials, confusion results. Technically, plaintiff would now be required to deny the denials. It is little enough to require defendant to organize her pleadings properly. There should be no question, in the future, about judicial admissions. Plaintiff should know what allegations require reply and which do not and should not be required to deny 14 paragraphs in one reprise.

We accept defendant's argument that her claims of restitution are properly included in new matter.

Defendant seeks reimbursement only if the court grants the relief requested by plaintiff. The allegations can be denied without confusion. The amount of expenditures made in reliance of a building permit may be relevant in determining estoppel, laches, clean hands and the other defenses raised by defendant. As we have pointed out, defendant does not have a cause of action against the township and Pennsylvania Rule of Civil Procedure 1031 technically does not apply. Rule 1030, which governs new matter, states: "A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading."

Plaintiff argues that defendant may not raise the affirmative defenses that have been raised. It has been held that laches is not a defense to an action taken by the commonwealth to enforce its police power. *Clearview Land Development Co. Inc. v. Commonwealth,* 15 Pa. Commw. 303, 327 A.2d 202 (1974). However, it was also said in that case:

"Laches may be defense against the commonwealth assertion of its police powers in the limited situation where agents of the commonwealth have actively aided in and expressly approved of the continued operation of a business later alleged to constitute a public nuisance. See *Commonwealth v. Folcroft Landfill Corporation,* 1 Pa. Commw. 356 (1971). (footnote 7, 15 Pa. Commw. at 309, 327 A.2d at 205).

There seems little difference in the defenses of laches, estoppel and vested rights. The same policy considerations apply to all three.

The issue is not so free from doubt to justify preclusion of the defenses at this stage of the case. However, allegations fall far short of making clean hands a viable defense. Defendant may not defend

on the grounds that the township has not diligently enforced its ordinances or has enforced this ordinance unequally. *Franklin Township v. Goetz,* 25 Adams Co. L. J. 185 (1983).

It may be that the court could require the township to recompense Ms. Herring as a price for the enforcement of the ordinance depending upon what Topper may have said and the extent to which defendant relied upon his statements. The allegations are sufficient to raise laches, estoppel or vested rights even though they would not be sufficient to state an independent cause of action against either the township or Topper.

We will dismiss the new matter and give defendant an opportunity to replead in conformity with this opinion. Defendant's allegations of unclean hands, specifically paragraph 23, however, are dismissed with no right to replead.

## ORDER

And now, this April 23, 1986, the complaint against the additional defendant Clyde W. Topper, is dismissed with the right to file an amended complaint within 20 days hereof.

Defendant's new matter is stricken. Defendant is given 20 days from this date to file amended new matter in conformity with this opinion. However, no right to replead paragraph 23 is granted.

Defendant is further directed to correct her notice to plead when her amended pleading is filed.