**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3536
_____

BARRY YOUNG,
                              Appellant
v.

SCHOOL DISTRICT OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 06-cv-04485)
District Judge:  Honorable Louis H. Pollak
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 22, 2011
Before:  SLOVITER, FISHER and WEIS, Circuit Judges

(Opinion filed: May 11, 2011)

_____

OPINION
_____

PER CURIAM.

        Barry Young, proceeding pro se, appeals from the order of the District

Court entering final judgment in favor of the defendant.  For the following reasons, we

will affirm.

1

# I.

In December 2006, Barry Young filed a pro se complaint in the Eastern District of Pennsylvania against the School District of Philadelphia ("the school district") alleging harassment, retaliation, discrimination, and unfair hiring claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-963 ("PHRA").[1] He also alleged violations of the substance abuse policy contained in the collective bargaining agreement between the school district and his union, as well as state law claims for defamation, forgery, and breach of a resignation agreement.

The school district hired Young in September 2002. Because Young's position was considered "safety-sensitive," he was subject to random drug testing and testing for reasonable suspicion. While employed by the school district, Young was a member of Local 1201, Firemen and Oilers Union ("the union"). A collective bargaining agreement ("CBA") governed the relationship between the school district and the union, and the CBA included a Policy on Substance Abuse ("PSA"). Two weeks after his employment commenced, Young was accused of stealing classroom supplies. At his disciplinary hearing in January 2003, Young's supervisor, Timothy McCollum,

---

[1] In addition to the instant case, Young filed two other complaints in the District Court. The District Court granted summary judgment in favor of the defendants in the first, in which Young alleged that the union discriminated against him because of his race. (D.C. 07-cv-03576). In the second case, against the Governor of Pennsylvania, Young alleged that the Pennsylvania Human Relations Commission failed to properly investigate his claim against the union. The District Court dismissed the action. (C.V. 09-cv-02220).

recommended that he be discharged. Young was not fired; he claims that, as a result, McCollum instigated a campaign of discrimination, harassment, and retaliation against him.

Young also contends that the PSA was applied to him in a discriminatory manner. He admits to using drugs and alcohol. In January 2004, Young sought assistance with his substance abuse problem. The school district referred him to his union representative, Ron Ellis, who arranged for Young to attend a rehabilitation program in Florida. Upon his discharge, Young participated in an outpatient treatment program in Pennsylvania. In March 2004, Young again sought help for substance abuse. He signed a "self-referral" notice and was referred to rehabilitation. At the end of March 2004, Young tested positive for drugs in his return-to-duty test. He returned to work in April, and tested negative in a follow-up test in May.

In June 2004, Young contacted Ellis, and asked him to send him to a psychiatrist or after-work rehabilitation program due to ongoing alcohol abuse. Instead, Ellis referred him again to the Florida inpatient program. Following his discharge, he again participated in the Pennsylvania outpatient treatment program. He returned to work in June 2005 after being cleared by a substance abuse professional and after passing a return-to-work test. A follow-up test in October 2005 was positive for cocaine. After notice and a termination hearing, the school district told Young that, pursuant to the PSA, he would be fired because he had tested positive for drugs while on probation. Ellis convinced him to sign a resignation letter, which entitled him to termination benefits.

Young claims that Ellis coerced him into signing the resignation letter.

In August 2007, the Magistrate Judge granted Young's motion for appointment of counsel, but later vacated that order after a five-lawyer Employment Discrimination panel rejected his case three times. In January 2009, the school district moved for summary judgment. Young moved to amend his complaint to add a claim of wrongful termination. In September 2009, the District Court denied Young's request to amend the complaint as futile, as Young's argument was already within the scope of the litigation, and denied his motion for a speedy trial. The court granted the school district's motion for summary judgment as to his claims of racial discrimination, harassment, retaliation, unfair hiring practices, defamation, and forgery, and denied it as to Young's CBA violation and breach of contract claims. Both parties filed motions for reconsideration. In March 2010, the District Court granted the school district's motion, dismissing Young's CBA violation and contract claims, and denied Young's motion in part, and dismissed it in part as moot.

## II.

In reviewing a District Court's grant of summary judgment, we exercise plenary review and apply the same standard that the District Court should have applied. Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006); Fed. R. Civ. P. 56(a). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to

4

judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001); Fed. R. Civ. P. 56(a). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." <u>Saldana</u>, 260 F.3d at 232 (internal citations omitted).

We review a denial of a motion for reconsideration for abuse of discretion, while reviewing the District Court's underlying legal determinations de novo and its factual determinations for clear error. <u>Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros</u>, 176 F.3d 669, 673 (3d Cir. 1999).

### III.

A. <u>Order Vacating Grant of Motion for Counsel</u>

Young challenges the District Court's decision to vacate the order granting the appointment of counsel. We review the District Court's decision for abuse of discretion. <u>See</u> <u>Parham v. Johnson</u>, 126 F.3d 454, 456-57 (3d Cir. 1997). First, there is no constitution or statutory right to appointed counsel in civil cases. <u>Id.</u> at 457. Second, a panel of employment discrimination lawyers rejected Young's case three separate times. As such, we perceive no abuse of discretion in the court's decision to vacate its earlier order.

B. <u>September 2009 Order</u>

1. Discrimination

Title VII prohibits discriminatory employment practices based upon an

5

individual's "race, color, religion, sex, or national origin." See 42 U.S.C. § 2000e-2(a).

A plaintiff carries the initial burden of establishing a prima facie case. See McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case, a

Title VII plaintiff must demonstrate that: 1) he belongs to a protected class; 2) he was

qualified for the position; 3) he was subject to an adverse employment action; and 4) the

adverse action was under circumstances giving rise to an inference of discrimination.

Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). A defendant can rebut the

claim by presenting a legitimate, non-discriminatory reason for the employment action.

Id. The plaintiff must then "establish by a preponderance of the evidence that the

employer's proffered reasons were merely a pretext for discrimination." Id.

Young is a member of a protected class, and the District Court assumed the

second and third elements of the prima facie case were also met. The relevant question,

therefore, is whether he had been subject to an adverse employment action under

circumstances suggesting discrimination.

Young claimed that the school district applied the PSA policy in a

discriminatory way to him, as compared to white employees who had either self-referred

or failed drug tests.[2] The District Court assumed without deciding that the differences in

---

[2] The records of three white employees were submitted into evidence. Employee A signed a self-referral form after being directed to take a reasonable suspicion test. He never returned to work and resigned after being called to a hearing to discuss unauthorized absences. Employee B, who is still employed by the school district, tested positive for drugs and went to rehabilitation. After returning to work, Employee B was tested four times, all of which were negative. Employee C submitted two self-referral

treatment between Young and the three white employees were sufficient to fulfill the final prong of the prima facie case. Nevertheless, the school district countered that Young's violation of the PSA was the reason for his termination. We agree with the District Court's conclusion that Young's evidence could not overcome the school district's race-neutral reason for his termination. Accordingly, the District Court properly granted summary judgment in favor of the school district on this claim.

2. Harassment

To establish a claim of harassment under Title VII, a plaintiff must show that: 1) he suffered intentional discrimination because of his membership in a protected class; 2) the discrimination was pervasive and regular; 3) the discrimination detrimentally affected him; 4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and 5) respondeat superior liability exists. Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).

Young alleged he was subjected to harassment on account of his race. The District Court considered each alleged instance in detail, finding that there was no evidence that any of the alleged acts were racially motivated. He alleged that McCollum: 1) recommended his dismissal; 2) cursed at him in the classroom and demanded that he and another African American stop discussing religion in the classroom; and 3)

forms, then tested positive for drugs, and then resigned. The District Court determined that, within the meaning of the PSA, Young self-referred twice: once, when he signed a self-referral form in March 2004, and twice, when he voluntarily asked Ellis to send him to rehabilitation. His circumstances were most like Employee C, who self-referred twice and who was tested more frequently than Young after returning to work.

wrongfully marked some of Young's absences as unexcused. The District Court found that McCollum's actions might have been "boorish," and were evidence that he and Young disagreed, but concluded that there was no evidence indicating that McCollum's actions were racially motivated. Likewise, Young's claim that a supervisor gave him faulty equipment, failed to respond to his calls for assistance, and made a false report about safety issues lacks any suggestion that any of the actions were on account of Young's race. Finally, Young's claims that the school district failed to pay him for the leave time reflected on his pay statement at the time of his resignation and forced him to undergo drug tests upon his return to work do not constitute harassment under Title VII. Accordingly, summary judgment on this claim was proper.

3. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must present evidence sufficient to establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken; and (3) there is a causal link between the protected conduct and the adverse action. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).

The District Court concluded that Young did not engage in any protected conduct. Young claims that he was terminated in retaliation for his complaints to Ellis about McCollum's harassment. Protests of discrimination can amount to protected activity; however, under Title VII they must allege that "a protected characteristic was the basis for the adverse employment action." Curay-Cramer v. Ursuline Acad. of

8

Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006). As the District Court noted, Young complained to Ellis that McCollum improperly coded his absences as unexcused. Young admits that he did not complain to the union about any harassment on account of his race. Because Young could not satisfy the first element, he failed to establish a prima facie case of retaliation, and summary judgment was appropriately granted.[3]

4. Unfair Hiring

Young's unfair hiring practices claim arose out circumstances relating to an earlier term of employment by the school district. The District Court noted that Young had failed to exhaust his administrative remedies on this claim. See Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). Accordingly, the District Court properly granted summary judgment on this claim.

5. State Law Claims

The District Court properly granted summary judgment in favor of the school district on Young's defamation and forgery claims. First, local governments and agencies are immune from suit for defamation. 42 Pa. Cons. Stat. § 8541; see also Keeler v. Everett Area Sch. Dist., 533 A.2d 836, 837 (Pa. Commw. Ct. 1987) (defamation not one of the exceptions provided for in 42 Pa. Cons. Stat. § 8542(b)). Second, plaintiff

---

[3] To the extent that Young raises his claim of retaliation under the First Amendment, in addition to Title VII, he would need to prove that he engaged in protected activity, that the school district responded with retaliation, and that his activity was the cause of the retaliation. See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997). Under this standard, assuming the first two elements were met, Young cannot demonstrate that his termination was causally related to his objections to Ellis. The school district's stated reason for firing Young was his violation of the PSA.

failed to support his claim that his signature on the self-referral form was forged when he admitted at his deposition that he did sign the form.

6. Motion to Amend Complaint

Young argues that the District Court erred in denying his claim for wrongful termination, because he was within the statute of limitations for claims brought pursuant to the Equal Pay Act, 29 U.S.C. §§ 206, et seq. The Equal Pay Act is inapplicable to Young's claim, which does not rest on gender discrimination. Furthermore, the District Court did not deny the motion based on its untimeliness. Rather, the court disallowed the claim because its underlying argument was already within the scope of the litigation. Accordingly, the District Court did not abuse its discretion in denying Young's motion. See Winer Family Trust v. Queen, 503 F.3d 319, 325 (3d Cir. 2007).

March 2010 Order

The District Court initially denied summary judgment on Young's claims that the school district violated the CBA and his resignation agreement. The school district moved for reconsideration, and the District Court granted the motion. It concluded that state law governs Young's claim that the school district breached the CBA. See Pennsylvania Public Employee Relations Act, 43 Pa. Stat. §§ 1101.101, et seq (governing labor relations between public employers and their employees); see also Hollinger v. Dep't of Pub. Welfare, 365 A.2d 1245, 1249-51 (Pa. 1976). In addition, Pennsylvania labor law requires arbitration of all disputes arising under public sector

10

collective bargaining agreements.  See 43 Pa. Stat. § 1101.903 ("Arbitration of disputes or grievances arising out of the interpretation of the provisions of a [CBA] is mandatory."); Martino v. Transp. Workers' Union of Phila., 480 A.2d 242, 248 n.10, 249 (Pa. 1984).  Even if the District Court had jurisdiction to hear Young's CBA claim, there is no evidence in the summary judgment record suggesting that he pursued his claims through the mandatory arbitration process.

In addition, the District Court considered that Young's motion indicated that all of the evidence relevant to his breach of resignation claim was not before the court.  Because Young's federal claims had been dismissed, and because the record was relatively undeveloped as to these remaining claims, see Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 444 (3d Cir. 1997), we find that the District Court did not abuse its discretion in dismissing the claims without prejudice for refilling in state court.

Young's motion for reconsideration challenged the grant of summary judgment on his discrimination, harassment, and retaliation claims.  The District Court analyzed each of Young's arguments in detail, and we will not recreate those now.  The District Court did not abuse its discretion in determining that Young's arguments either mirrored those previously rejected, or failed to present any new evidence, see Max's Seafood Café, 176 F.3d at 677 (evidence is not new where it is "available when the court granted the motion for summary judgment"), or evidence containing "manifest errors of law or fact."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

11

V.

For the foregoing reasons, we will affirm the District Court's judgment.